We'll call now appeal number 06-7237, Dean v. Department of Veterans Affairs. Mr. Carpenter, welcome back. Good afternoon. Please proceed. Good afternoon, Your Honor. The court please count Carpenter bearing on behalf of Mr. Paul Dean. Mr. Dean believes that the Veterans Court misinterpreted 38 U.S.C. 51-3A when it concluded that specific notice of what had already been provided in general, excuse me, a general notice was acceptable and not the specific notice. What's the specific notice? What were they supposed to say that they didn't say? Well, in this case, Your Honor, it revolves around the question of the diagnosis of post-traumatic stress disorder. In the original decision, it was denied because there was not a clear diagnosis. In the second decision by the VA, it was denied because there was not a current diagnosis. There was an examination order. No, but what's it supposed to say? What's the notice? In your view, this notice looks as though it's a form letter. We're talking about the October 2001 letter. That's the key thing there, right? Yes. Okay. So it's a form letter that seems to be adapted to PTSD, right? I don't believe it's really adapted to PTSD. It mentions it at the end, very specifically. Well, it mentions PTSD. It doesn't mention the problem that existed from the VA's point of view in substantiating this claim, and that's what the specific notice is. What's it supposed to say that it doesn't say? I mean, it's very detailed. It tells you how the kind of proof you're supposed to come up with. What are they supposed to do that they didn't do? What's it supposed to say? In this case, I believe what it needed to say was that the evidence of his diagnosis of PTSD was not sufficient to substantiate the claim because there was conflicting evidence that the diagnosis of his condition was something else, some other psychiatric disability, and to explain to him what evidence he needed to submit that would substantiate his claim for compensation for post-traumatic stress disorder. They left him without any understanding of if you submit a medical opinion that says the contrary to what the VA examination says, then the evidence would be in equipost and we would be required to award the benefit. It's supposed to get that kind of detail as to the decisional process? Well, certainly, Your Honor, because he has to understand how the submission of what they're asking for or what they're going to allow and develop is going to substantiate the claim. So, in other words, what's wrong with this notice is that it doesn't tell him what the impact of submitting this evidence would be? That's correct. The impact of the negative evidence that was developed by the VA examination and what the impact would be of positive evidence that would contradict or counterbalance that negative evidence. Did he not have a copy of the VA exam? No, Your Honor, he did not. How do we know that? Well, I was his counsel at that time, and they do not send a copy of the examination to the veteran's attorney or to the veteran as a matter of fact. Even if requested? Well, when requested, it can take months, and we eventually got a copy. This one, we got the record on appeal. But I do not believe, and I'm sorry, it's my own recollection at this point that I have to rely upon, that I ever got a copy of that examination. Did you ask for it? I'm sure I did ask for it, yes, Your Honor. At the time? At the time, because every time we are informed... It was a December 2002 exam. That's correct. And you asked for it within 30 days? I'm sure we did. We probably asked for it in anticipation of the examination. We get a notice generally at the same time that the veteran does that the veteran has to submit himself to an examination. We send a request to both the examining medical center and to the regional office that upon completion of that examination, we want a copy of it. Right. But even if we had gotten a copy of it, we have no way of knowing what the VA intends to do with that, particularly as it relates to the existing evidence that was in the record that had been previously submitted. I don't understand what you're saying. Obviously, they're going to add it to the stack of documents in his file, and it will be weighed for whatever it is probative of. That's right, Your Honor. But the duty to notify under 5103 has to tell us what the VA considers to be the impact of that. I don't see where you get a basis for that. The statutory language is very terse. It doesn't use words like specific or impact. It's a very general legislative command. In Mayfield, we said word to the effect that as long as it's intelligible to the veteran, the type of evidence that's missing, that that's enough. So it doesn't say anything about impact or about level of detail or degree of specificity. There's nothing in Mayfield to that extent at all. I don't see anything in the statutory language that would support what you're now saying, that an impact assessment must be provided by the VA in the letter of notice in order for it to comply with the statute. What the statute says is that the notice must indicate which portion of the information, evidence, if any, that was provided had not been previously provided. So if you get new evidence, if the VA gets, as they did in this case, new evidence, how can you comply with the specific reference in the statute to what was previously provided without telling the veteran what the impact of that is? Because the underlying proposition in 5103 is the evidence necessary to substantiate the claim. Well, maybe it doesn't exist. Not every claim is valid. Not every claim will prevail. If the evidence doesn't exist, then presumably it can't be supplied because it isn't. Except, Your Honor, in this case, all that was at issue was is he disabled from post-traumatic stress disorder or is he disabled from the condition that the VA has conceded he is disabled from, depressive disorder. This court has held an effort that there is a difference between depression, because of a separate diagnostic code, and post-traumatic stress disorder. He has the right to know where the VA is coming from in rejecting his claim, and he needs to know that before they make their first decision. But how do you deal with Judge Dyke's practical point that what you're asking for is an extremely detailed set of advice based on a review of everything in the file and everything that potentially could be added to the file, which is like a final ruling on the claims. You're saying that they have to do a final ruling, put it in a letter, then wait for his response, and then do another final ruling. I'm sorry, I don't believe I'm going quite that far. What I am suggesting is that under the plain language of the statute, before there is a first unfavorable decision, the VA has to make a preliminary assessment of what they have obtained, what has been submitted, and then say to the veteran, you are missing this. This is the evidence that is missing, and if you submit this evidence, and I don't know how you can do that generally and not specifically, that will substantiate the claim. Particularly when, as in this case, you have a specific VA examination that they are prepared to say, based upon this examination by this VA examiner, notwithstanding the fact that other VA clinicians diagnose you with post-traumatic stress disorder, we're going to conclude that you are not currently suffering from a disability from post-traumatic stress disorder. Mr. Carpenter, are you saying basically that we need to have two notice provisions then? One when the record is complete, and another one after the record has been evaluated, and if there are any shortcomings in that record, that you send another notice out to the veteran? Well, I would probably support that view. What I am suggesting is... I'm just trying to figure out what you're trying to... What I'm trying to suggest is that the obligation to notify has to be customized. It has to be individualized to the individual veteran or claimant. When? If it's not... When? When the VA gets a complete or substantially complete application. When it's substantially complete or otherwise, then the application is finished, right, at that point? The application... Before it's evaluated. That's correct. And at that point, the VA, in my view, needs to go through a checklist of, we have evidence of incurrence, we have evidence of a current disability, and we don't have evidence that relates the current condition to service. But the statute only provides that upon receipt of a substantially complete application, notice would be given, right? That's under 5103A. That's correct, but it goes on to describe what that notice shall include, and it talks about any information, any evidence, which would substantiate the claim, which has not been previously provided. And the disconnect here is the not previously provided. So then the application is incomplete at that point. Then there's a separate route for the VA to go through when they receive an incomplete application. If we're going to turn this on whether it's a complete application or an incomplete application, what Congress has instructed is if you get an incomplete application, then you give a different notice. I'm asking, is that what you want us to hold specifically, that if it's a two-step process, two notices? What I'm asking you to hold is that specific notice must be made that is customized to the individual veteran's claim. When? At the time in which the VA knows that there is something missing that fails to substantiate the claim. So they have to be evaluated. Absolutely. They have to evaluate. There has to be some preliminary assessment of what they have received in order to be able to comply with the notice mandate of this statute. Now, are you saying that there were multiple diagnoses in his file, some of which said he did have the stress disorder and some of which said he didn't have the stress disorder? That's correct. Now, what is it that you imagine Mr. Bean would have done or should have done if he had gotten a letter that you would have considered sufficient? What would it have said and what would he then have done? Well, obviously it's dependent upon what the VA tells him, but presuming that the VA tells him, we have an examination that says that you currently suffer from depressive disorder and do not, by inference, suffer from post-traumatic stress disorder, we need medical evidence from you, from a competent medical, mental health professional, that says that you currently suffer from post-traumatic stress disorder and that it's related to service. And that you'll win if we get this? Sorry? And that you'll win if we get this? No, not win, but you will have substantiated your claim. Because the language of the statute is to substantiate the claim. Then it becomes a question of using the 5107 lens of analyzing the positive and negative evidence. And what's missing in this equation is the VA's explanation to Mr. Bean as to what the difference is between the last VA examination and his ongoing medical treatment by a VA physician that diagnosed him and is treating him for post-traumatic stress disorder. Do we have the latter set of documents in this appendix? No, Your Honor, because that was not an issue in either the appeal below or in our presentation in this case. Do we have the most recent, the December 2002 diagnostic evaluation? I don't believe that's in there. Let me double check. No, I don't see it. Now, is it your view that we have to look at the December 2001 notice letter in a vacuum and that we're not allowed to look at it in light of what he had been told in the earlier board and RO decisions? Yes. And the reason for that is, Your Honor, is that that was the first time that the VA had provided him notice in anticipation of the first unfavorable decision which took place in supplemental statement of the case thereafter. This case had been specifically remanded for VCA notification and to get an exam. He got the exam, he got the notice, and then he got an SSOC that was the first unfavorable decision on the claim that had been pending from 1992 and been in appeal status to that point. He needed to have received that notice first. Therefore, you have to look only at that notice and whether that notice did or did not review what had not been previously seen. What I need your help on here is that Judge Kasold seems to rely quite significantly in the series of VA decisions at various levels, which he cites in the second paragraph of his opinion. Yes. And when I read the opinion together, I read him as saying the two notice letters in the fall of 2001 were sufficient and they were all the more clearly sufficient in the context of all of the adjudicatory opinions, I'll call them, so that the veteran couldn't have been in doubt of what he needed. He needed a positive diagnosis, current positive diagnosis. What's wrong with Kasold's using the earlier decisions together with the 01 letter? He's not on notice of what current means in relationship to the comparison between his VA doctor, who diagnoses him with PTSD, who treats him. When? What is the date of the positive diagnosis by any VA doctor? It's not in the record that's before the court, Your Honor, and I don't believe it was in the record that was before the Veterans Court, although it may have been, but it wasn't argued. All that was argued was notice, and that he was entitled to have been put on notice of what the VA regarded in terms of the very question of current diagnosis, that we consider the VA examination to be your current diagnosis, and unless you submit additional medical evidence that contradicts that, then we intend to accept that and deny your claim, because your claim cannot be substantiated. So really, it sounds to me like you're saying he's really entitled to a draft decision that tells him you're going to lose because of this unless you provide that, a new positive current diagnosis of PTSD. The language in 5103 that says any information, any evidence, any material not previously provided, the answer is yes. All right. Well, the position is clear. Let's hear from the government. Mr. Hockey. Thank you, Your Honor. Welcome back to this court to you also. Good afternoon. Please proceed. Thank you, Your Honor. Mr. Bean is attempting to read the requirements of one statute into another. As Judge Dyke identified earlier, Mr. Bean seems to be seeking some sort of opinion about impact of what has already been provided and saying that the BCAA early claim or initial claim notification letter needs to address that type of a situation. I didn't hear him to argue anything about duty to assist. I heard him to argue only on the notice statute that the notice letter given didn't meet the requirements of that statute as properly interpreted. Maybe I misspoke. I used the term BCAA because that was the statute that had both the notice and the duty to assist provisions. Well, I'm sorry. I'm being imprecise. I understand him to be relying on the portion of the Veterans Code that requires notice and not to be relying on the other provision in the same title that talks about a general duty to assist. Okay. And with reference to 5103 subsection A as opposed to 5103 capital A, as we discussed in Mayfield and as the Veterans Court has thoroughly exhausted thus far in its decisions, the notice provision was designed to be issued at the outside of a claim upon receipt of a complete or substantially complete application. Well, that can't be completely correct because Congress made the notice provision applicable to pending cases, many of which would obviously have already had an initial decision. So going forward for new claims you would be right that the letter would precede the first adjudication in the RO, but for pending claims it would involve some pending claims that would have already had an initial decision per force, I think. As I recall, I thought that what Congress said in issuing the BCAA was that they identified an issue where it wouldn't apply, leaving open the question of whether the BCAA notice should be issued in pending cases, in other words, cases which had already had claims filed and had been appealed to the board but had not received a board determination. And the VA went ahead and issued BCAA notice letters, as they did in this case, in that situation. Because, as you know, the record in this case establishes that in 1999, for example, there was a final board decision denying Mr. Bean's claim for post-traumatic stress disorder. In 2001 there was a remand, and indeed the remand included... Well, it was designed to do two things, but the point of the parties jointly moving for the remand, and this is in the record, was to react to a change in the regulation with respect to post-traumatic stress disorder. At the same time, the BCAA becomes implemented, and so the remand becomes... handles both things. Re-evaluate the evidence with respect to this change in the definition of clear with respect to post-traumatic stress disorder claims, and also issue notice pursuant to the BCAA. So does the regulation on stress disorder require that there be a, quote, clear diagnosis? I think that the issue in the case was that initially it did, and then later on it was relaxed somewhat. So the question was, should the record be reviewed in light of the fact that the regulation language appeared to be relaxed? And this goes to the point, Your Honor, as I think you mentioned. Most of the reviews, the medical examinations and opinions in the case have concluded that Mr. Bean has not been able to establish the present disability of post-traumatic stress disorder. There was one opinion in which there was some potential connection, suggesting that perhaps the doctor in that case... When was that? I think it predated the 1999 board decision that their copy of the book was in the record. So it was several years before the most recent diagnostic finding. I believe that's true. In December of 2002. I believe that's true, because I believe that the existence of that was what led the parties to move the board to remand to the regional office for further review in light of the change to the regulation with respect to post-traumatic stress disorder. Is it your understanding that neither Mr. Carpenter nor the veteran, Mr. Bean, had a copy of the negative diagnosis of December 2002? I can't comment on that, Your Honor. I would be surprised that a claim would not be able to get his own medical record. Have you read the file? I've reviewed the record. No, I'm asking a different question. Have you read the VA medical file? I have not reviewed Mr. Bean's claims folder, no, which would include information that may or may not have been in the record before the board. I have read record documents that were before the veterans court. I've confined my review to the record before this court and to some documents that were before the veterans court, but may not be before this court in the appendix. What about the core point that he makes, that the veteran in the shoes of Mr. Bean should have been told, Mr. Carpenter says, that look, we have this current negative diagnosis that says no PTSD, and therefore despite the earlier ones that said yes or maybe yes, you're going to lose unless you can find a private doctor or a VA doctor who's going to give you a positive diagnosis that yes, you do currently suffer from a stress disorder. Well, what's so unreasonable about that? Well, it's not statutory authorized. Well, we're not talking about the veterans department being criticized if they did too much, so you don't have to talk about authorized. We really should focus on what they're required to do. But Carpenter says they're required to tell him in the circumstances of this case that he needs a positive diagnosis because the most recent diagnosis is negative and the earlier ones are either ambiguous or too old. So he's going to lose if he doesn't come in with a new current positive diagnosis. And the only statutory provisions upon which Mr. Bean could rely to require the VA to issue some sort of notice that would identify the reasons or bases for denying this claim are 5104 and 7105-D1, neither of which are issued at the outset of the claim process, like 5103 subsection A is. So that's what I began with, is Mr. Bean would like this court to read the requirements imposed by the 5104, which deals with final decisions of the secretary, and 7105-D1, which deals with statements of the case which are issued upon submission of a notice of disagreement upon a final decision. He would like this court to read those requirements into the notice provision of 5103 subsection A. And we would say that no. If Congress had already actually issued those statutes with respect to 5104 and 7105-D1, prior to issuing 5103-A, it knew how to instruct VA or require VA to issue notices that would essentially provide a pre-adjudication or an adjudication of a claim, and it didn't do that when it implemented 5103 subsection A. Instead... Does it make a difference that this veteran was represented in at least the latest go-round before the veterans' board? I'll answer this by saying that the veterans' board appears to be leaning in that direction. In some recent decisions that they've issued in the last month or so, well, not as I've read them. In other words, suppose that Mr. Bean had been pro se at every step of the way until today. So then we have to look at the letter he was sent in the fall of 2001 from the standpoint of how would the average lay, non-lawyer veteran be able to absorb the letter and figure out what it meant, what it implied, and what he now better do. Well, that, I believe, is the intent behind VA's drafting of BCA letters, of 5103 subsection A letter. So I think that if you review the letter, which is at Appendix 17, it is in layman's terms. It's very understandable. It's basically... Well, except it seems very ambiguous. The only relevant provision I can find is at the top of page 4 of the letter, where there's the first mention of... post-traumatic stress disorder. Top of page 3? Middle of page 3? Letter, page 3. Right, letter, page 3. Yeah, the second bullet. Again... That form, by the way, isn't included, that VA form 2195-1. In the middle of page 3, it says we are enclosing VA... Oh, I see. But they did... Do you need to use it to document your PTSD stressor information? Well, it's not included in the appendix to this court. Why not? I don't think there's any evidence that it wasn't included within the letter. Well, why didn't you include it in the appendix? I mean, it seems to be... Well, I think you might have to ask Mr. Bean's counsel. I mean, our position is... Well, you're entitled to include stuff in the appendix, too. That may be, but I mean, our position is that there is no statutory basis for the relief requested in this particular appeal. And we're relying upon the plain language of the statute, legislative history that supports it, as well as the juxtaposition of that with respect to the other. The problem is, it's a question of how the statute ought to be read, what it ought to require. And it is at least potentially possible that we look at the undisputed facts here in the kind of letter that you're sending out and ask ourselves, does this comply with the statute? And we don't have a complete letter here. I don't understand it. I think that... Well, I don't know. I would think that the court actually probably would go beyond its jurisdiction if it was to try to compare what was in a particular letter and make a determination as to whether or not it satisfied the intent of the statute. I think what the court is required to do in this case is to look at the statute and say, is there a requirement in the statute to provide the type of specificity... We've held a repeat of it recently. We're not going to render abstract decisions on the meaning of the statute. We're going to look and see what the context is. And we've heard the argument presented here this morning, or this afternoon, that what Mr. Bean feels he's entitled to under Section 5103, Subsection A is some sort of impact letter, some pre-adjudicatory letter, indicating that, look, so far you've done this, we're going to need to hear this. You're going to have to go out and get Dr. X to say Z, Y, and A if you hope to prevail in this case. Mr. Hockey, what's wrong with that? That's not what the statute requires. Now, he will get that information as part of the notice he's provided under 5104 or 7105D1, where reasons and bases are provided, summary of the evidence considered is provided... Does he have an opportunity to correct a record at that point? Excuse me? Does he have an opportunity to correct a record at that point? 5104 notice is issued at the time of the regional office decision. He has an opportunity to appeal through a notice of disagreement to the board, at which point it triggers the obligation upon the part of the secretary to issue the 7105D1 notice. And that's issued after the 5103A notice? Well, 5103A notice is issued at the outset upon... Completion of the record? No. No. Submission of the claim. Submission of the claim. Which is defined by regulation as in 3.159, which we reviewed in PBA and some other cases. But the record is complete at that point? No, no, no, no. The application is merely, I'm Martin Hockey, I served X amount of time, here's my Social Security number, and I'm claiming I have a broken leg that I think I incurred in service, and I want to submit a claim for compensation. That's all. That's what the application requires. As far as what evidence is there to support my claim, that's what the development of the record is all about. That's what the 5103A notice starts. It starts that process. And then you gather that evidence all together, and at the end of the day, the regional office issues a decision as to whether or not the evidence as weighed and developed establishes the benefits desired. And the board, excuse me, the regional office, is required to explain itself when it issues its decision pursuant to 5104, not 5103 subsection A. Okay, and I want to go back to page 3 of the letter. You're criticizing Mr. Carpenter's request for what you and others have been terming here this afternoon as an impact statement, as going way beyond what the statute can fairly be read to require. But I'm trying to come at it from the opposite standpoint. Where in page 3 or page 4, the more specific parts of this letter, is there any kind of clear message that you need a positive diagnosis of post-traumatic stress disorder? I refer you now to page 2. What must the evidence show to establish the title? And it provides the well-known three prongs of evidence. But this is just generic. The first place that it talks about him and his case and his evidence, as I read this letter, is at the top of page 3. And the first mention one finds of PTSD is in the second line of the second bullet near the top of page 3. And nowhere do I see any language that says, hey, you better go out and get a private doctor and see if you can't get a positive diagnosis of currently suffering the stress disorder. With all due respect, Your Honor, I read on page 2 where it identifies very specifically that you must establish as part of your claim a current physical or mental disability. And this can be shown by medical evidence... But that's you, that's you, everybody. That's not this veteran, that's every veteran. It is, and it is this veteran as well. Yeah, but the statute seems to require to be made a distinction between what's already in the file and what would need to be added to the file. So the main burden of the notice here is what needs to be added and then secondarily who's going to go get it, the secretary or me, the veteran. When we read the statute as a whole, we begin, upon receipt of a complete or substantially complete application... Well, that was impossible in this case because this claim was filed in August of 1992, I believe. And so the BCAA came out in 2000 and the notice in this case was issued in October 2000. I'm just trying to get you to show me where he's told he needs a positive diagnosis. He's told he needs to establish a current physical or mental disability. And he is suing for PTSD. So the question is... Well, that tells him he has the burden of proof. It doesn't tell him what the problem is with his file. The problem with his file is that he has an old ambiguous positive diagnosis superseded by a clear negative diagnosis. QED, he needs to go get a positive current diagnosis or he's out of here. But he's never told that, that I can see in this letter. Well, I believe that all he's required to be told pursuant to 5103 subsection A is what he's been told in this letter. I believe that's what the statute requires. And I think the only way... Where does it tell him that? As I mentioned on page 2, I understand we're disagreeing in that Your Honor expects this page 2 to say something about the prior development of his claim. Page 2 doesn't say anything about diagnosis. It doesn't say anything about the prior development of his claim, but it's not required to. The notice that he obtained as part of the decision that he obtained as well as statements of the case he received, one of which I know is included in this appendix, provided the kind of information that Your Honor is seeking and that Mr. Bean asserts he's entitled to under 5103 subsection A. What we're saying is no, 5103 subsection A does not go to that level of detail. 5103 subsection A's notice is at the outset of a claim. Well, then is your position that we didn't need to send him any letter because the prior board decision told him all that the statute requires him to ever be told? There's an argument that hasn't been made in many of these cases as to whether or not the BCIA applies to pending board cases. That's not what I'm asking. I'm asking whether you would win on the last board decision and what it said about a missing diagnosis and therefore didn't need the December 2001 letter at all. I would think that's a different issue that's now presented to this court. In this case, the VA took it upon himself to issue in conjunction with moving to the court to require the issue to the BCIA. Well, let me put it to you this way. Suppose we find the letter on its four corners deficient. Can you nevertheless win on the ground that the board decision in 2003 gave him enough warning or any of the board decisions? Well, I think that's what the Veterans Court stated in its decision is that, look, as it used the word assuming arguendo, that these notices at issue weren't sufficient. This individual, certainly after eight years of claim development, knew what was required to establish his claim. The present disability issue was always at issue in all of these prior decisions. And so we're going to find that even if this particular October letter didn't satisfy the requirements of 5103A, there was no question. But what's your position on that? I know what Judge Kasol's position is. I read it and re-read it and re-read it. I would agree with Judge Kasol that the record before this court... And this is always going to come up in a situation in which these cases... But how is the statute complied with by a board decision? Doesn't the statute require some kind of separate notice from the VA itself? This is where we get to that question, which isn't presented here, but does the BCAA require issuance of a... I thought Mayfield held that notice was required and that you couldn't just rely on the past decisions. No, no. In this case, there is no decision. It's the question of the intersection between... The answer is you're not arguing here today that if you hadn't sent this October 2001 letter that the VA would have been compliant, right? I would think that there would be an issue as to whether or not... Assuming for purposes of your hypothetical that the VA did not send this letter, I think there would be a question as to whether the VA was required to send the letter. That's what we're suggesting. And the plain language of the statute, which implemented the BCAA... Help me to understand this process a little better. He files his application. He gets the notice. This is formal. What happens between then and the regional office decision? Well, there are all types of communications, and there's one example in here. But in the typical case, communications go back and forth with respect to trying to obtain the evidence. Letters may go back to me, as the PVA case discussed in length, with respect to even oral communications being allowable. And this is where the duty to assist kicks in. It does. That's what... Exactly. In other words, he's not just left on his own after he gets this letter from the VA. The VA is... He gets the letter. He has an obligation to respond to the letter, which it appears he may not have in this case. But he has an obligation to respond to the letter. In the typical case, the veterans do respond by saying, Look, I have Dr. Smith and Dr. Jones, and they have looked at me in 1999, and here's my permission to go get records that they may have in their possession. I served here in... I served in the... But suppose he doesn't bring in a medical diagnosis. Does the VA then have an obligation under the duty to assist to say you need a diagnosis, we'll provide a doctor? As this case, as this court examined in the PVA case, the VA is not required to have, under their implementing regulations, they're not required to obtain a medical opinion or have a medical exam conducted. But should VA determine that the evidence, that it is necessary, then VA will obtain a medical opinion or have the individual be examined by a physician. It's all part of the development so that there's no obligation upon VA until VA makes a reasonable determination that, yes, in this case, the evidence would benefit from a medical examination or a medical opinion. And that's all spelled out clearly in the regulation, which this court has already reviewed. This is after the 5103 notice. Subsection A notice. The development... We can't stress enough that the 5103 subsection A notice starts the process. It doesn't finish it. It doesn't provide pre-adjudicatory notice. It starts the process. And then we have the coordination between the veteran and the VA, which we all have come to know as the VA claim development process. And at the end of that process, a decision is issued. And that's where 5104 comes in, where the VA regional office will provide a reasons and basis summary of the evidence considered as plainly identified in the statute. At that point, if the veteran is still not satisfied, he can appeal by submitting a notice of disagreement. But doesn't the VA really make an initial determination as to whether or not to assist the veteran? There is written in the BCAA, which is, I guess you could call it, a minor sort of holdover from the old 5107, which the BCAA replaced, the old well-groundedness requirement. There is basically a kind of frivolity standard, I would say, in which based upon the information submitted at the time of the claim, if the VA determines that this really is a baseless claim, say the person basically says, I was not a veteran in World War II, but I happened to be in France at the time, the VA can make a determination based upon that that this individual will never be eligible for compensation. If they don't have to do anything, then at that point they can send them a letter saying, no, you don't have a basis upon which to proceed, and that's in the statute. And especially I know it's in the regulatory language that implements the statute, because we discussed that in one of our cases with respect to the regulation. And then, if I can just conclude, after all of this, after the final decision is issued, then the veteran can go and seek further information. I'm still not clear. Suppose in the course of this process the VA determines that there's a deficiency in the application and that he needs a medical exam to show that he has PTSD. Does the Veterans Administration have an obligation to go to him and provide a medical exam or suggest to him that he should get a medical exam? In other words, are there continuing obligations on the part of the Veterans Administration after they send this 5103A notice? I mean, this is a very significant question. It was part of our regulatory challenge, because as you may recall, the petitioners in that case, when the VCA was enacted and we implemented our regulations, the petitioners strongly wanted an obligation, just basically a strict liability type obligation upon the VA to always... I'm not talking about always. So what I would refer the Court to would be the regulatory language 3.159. That's the answer to the question. Yes, there is an obligation. Will or is obligated? The VA will provide a medical examination or obtain a medical opinion when circumstances justify it. It's obligated to do it. I mean, I have 3.159 here somewhere if you want me to send it. It's not mandatory. It's specific. It's not mandatory. That was one of the issues. It's not mandatory in every case. It's not mandatory in every case, but when circumstances warrant, they will... Again, and to answer some of the maybe unanswered questions, but sort of related, I'm just quickly looking at 3.159, talking about, and actually, Judge Garrison, you may have brought this up, circumstances where VA will exchange information, inform the claimant, I couldn't find that document you sent, and they will communicate that information to the veteran. So there are... I'm sorry. What's the answer to my question? The VA determines that a medical exam is needed in this case, right? Okay. If the VA determines that, then is it obligated to either provide it or tell him that he should provide it? Subsection, let me see, 3.159 of the regulation implementing the VCA, which includes both 5103 and 5103 capital A, and I don't know which subject it is, but it's number 4, providing medical examinations or obtaining medical opinions. In a claim for disability compensation, the VA will provide a medical examination or obtain a medical opinion based upon a review of the evidence of record if VA determines it is necessary to decide the claim. So it's obligated to do it. If it makes that determination. If it determines that it's necessary to decide the claim. Thank you. All right. Thank you, Mr. Hockey.  You know, what concerns me is that what the Veterans Court did and what the VA has just done in its argument is to read out the last phrase of the statute not previously provided to the Secretary that it's necessary to substantiate the claim. If we accept what the government says, they're only required to give one notice at the time in which they get the application, and regardless of what happens in the interim, they're going to make their final decision without ever having told the Veteran any information, any medical or lay evidence not previously provided to the Secretary that's necessary to substantiate the claim. That omission is fatal. The statute requires it. This letter and issue here doesn't provide that information. There was no subsequent notice after they got the VA examination. They were on notice, or excuse me, they knew, and the Veteran didn't know. The duty to inform is to take that barrier down. Tell the Veteran and his representative what evidence is necessary that was not previously provided. You can't read out the not previously provided. Yet the VA says, once we've done it, once we ring the bell, that's it. You're done. You get the generic notice. Judge Castle says that that's fine, and you don't have to comply with the not previously provided language of the statute. All right. I think we have your position clearly. Thank you both. We'll take the case under advisement. All reports are adjourned until tomorrow morning at 10 a.m.